UNITED STATES DISTRICT COURT  SOUTHERN DISTRICT OF TEXAS

United States District Court
Southern District of Texas
**ENTERED**
December 21, 2018
David J. Bradley, Clerk

| | |
|---|---|
| Terrance Bailey, § | |
| § | |
| Plaintiff, § | |
| § | |
| versus § | Civil Action H-16-1202 |
| § | |
| The City of Houston, § | |
| § | |
| Defendant. § | |

## Opinion on Summary Judgment

1. *Background.*

Terrance Bailey sues the City of Houston for discrimination based on race and unlawful retaliation. Bailey is black; he began working as a firefighter for the Houston Fire Department. He worked at fire station 21 for ten years.

In February 2009, Bailey met with Captain Joe Schwaigger, Captain Shelley Squires, and District Chief Kenneth Currie to express his unhappiness about working at station 21. He threatened to file a complaint with the Equal Employment Opportunity Commission if Currie did not transfer him to station 47 as a permanent fill-in. Currie told Bailey that he did not have the authority to transfer him to that specific station but offered to send him to station 37. Bailey agreed to the transfer. Squires documented the transfer in Bailey's personnel record – known as Form 42. Bailey signed his record and moved stations on February 27th.

The Form 42 did not prevent Bailey from receiving promotions or other benefits. Bailey says that he reviewed and signed some of his personnel entries, but not all of them. He says that for some entries, he was not asked to sign. He insists that it was part of the fire department's retaliation against him for reporting discrimination. The City claims that not all personnel entries require a signature. For example, counseling entries require a signature; an entry for vacation time or substitution does not.

2. *Station 37.*

Captain Ayres became Bailey's new supervisor at station 37. Bailey was told not to contact Squires or Schwaigger, and this was noted on Bailey's Form 42. Bailey refused to sign it because he believed that the last two sentences of the entry were incorrect.

He was advised specifically about the chain of command, including asking for permission to speak to Currie. The entry also notes that Bailey called Currie to discuss his unhappiness with his station transfer. Squires also said Bailey was instructed not to contact him or Schwaigger. Bailey says he did not receive this order. He insists the officers told him that he could bypass the chain of command because Squires was on vacation, but Ayres was available.

On March 17th, at 6:30 a.m., Bailey reported to work. Captain Richard Watterson assigned Bailey to the ambulance. Forty-five minutes later, Bailey asked him to go home because he felt sick. Shortly after, Currie asked Bailey to submit a doctor's note – Form 48.

Currie filed a complaint with Houston Fire Department Staff Services later that day. He believed that Bailey went home sick to avoid ambulance duty. Bailey submitted a note from his physician. The department investigated and found in favor of Bailey.

3.   *Charge.*

On March 19th, Bailey filed a charge with the Commission, claiming that black firefighters were discriminated against because of their race. He says that they were denied opportunities to drive the chief and train on the ladder truck. He says that white firefighters were given these opportunities. Bailey also says that black firefighters were routinely reported for not using the chain of command and were always assigned to drive the ambulance.

Bailey also says that he was retaliated against for reporting this alleged discrimination. He says that the retaliation started once he transferred to station 37. Because he thought that he was retaliated against, he asked for medical leave. The City approved it from March 23rd to May 23rd.

On March 31st, Bailey telephoned Squires, who documented this call on Bailey's personnel form. Bailey says he did not review or sign this entry. During the call, Bailey repeated three times that the Chief should not call him again even though Bailey had called him. In April, Ayres noted that Bailey received a direct order not to contact the officers at station 21. The notation further stated that Bailey continued to contact Squires. Ayres says that he reminded Bailey not to break the chain of command. Bailey says that he received no such order and that it was "normal" for him to continue to contact Squires. Bailey characterized the March 31st entry as non-disciplinary. Bailey reported no consequences resulting from these entries.

While Bailey was at station 37, he was sent to fill-in for one shift at station 67, which is in a different district.

Bailey testified that he witnessed discrimination against other black firefighters. He asserts that his only claim against the City is for retaliation against him for reporting it.

Bailey believes that driving the ambulance is the least desirable job; however, firefighters on ambulance duty receive additional pay. A firefighter can be assigned to a ladder truck, pumper truck, ambulance, or the chief's car. He says he relinquished driving the ladder truck so that younger firefighters could gain more experience. Bailey also says one of his superiors, Captain Schwaigger, made derogatory comments. Bailey says Josh, another firefighter, overheard Schwaigger joking about transferring black firefighters out of the station.

Bailey and two other black firefighters complained about discrimination in 2008. They were told a rotation would begin to allow them to drive the ladder-truck and the chief. Bailey said that the rotation never happened. However, Bailey voluntarily stopped driving the ladder-truck so that the younger firefighters could get this experience.

Bailey also asserts that his relationship with Schwaigger was also tenuous because they had business and personal problems outside of the fire department. This is not a fire department problem, it is a personal problem.

4. *Discrimination.*

Bailey has no evidence of invidious discrimination. He says that the City discriminated against him because of his race. In fact, he concedes that he was not discriminated against. He only claims that other black firefighters at his station were. After Charles and Fuller – two other black firefighters – transferred, Bailey says they were replaced by white firefighters who were treated better. No evidence shows that these firefighters received better treatment. Even if they were treated more favorably, no evidence supports that it was racially motivated. Bailey conceded that he gave up his ladder-truck time. If Bailey chose to give up a desirable assignment, he cannot later say that this was discrimination. Because Bailey admits that he was not directly discriminated against, his claim evaporates.

5. *Harassment and Hostile Environment.*

Bailey accuses the City of harassment and creating a hostile work environment. Because he did not raise these claims in his charge of discrimination with the Commission, he is barred from asserting them. Further, he has presented no evidence to support these accusations.

6. *Retaliation.*

Bailey says the entries documented in his personnel record, the station transfer, and a one-shift reassignment were in retaliation for reporting discrimination. They were not.

Bailey must show he suffered a materially adverse employment action. He cannot; he asked to transfer stations. In fact, he referred to it as an agreement between him and his supervisors. He cannot later say that it was retaliation.

The fire department had legitimate, business reasons for its actions that were non-discriminatory and non-retaliatory. When the fire department transferred Bailey, it fulfilled his request; Bailey asked for it. The department assigned Bailey to fill-in for one shift at a different station because staffing is determined based on frequently changing needs. The staffing for the fill-in was not coordinated through those whom Bailey accuses of retaliating. The lead district chief and deputy chief made the decision, not the officers of station 21.

Regardless of whether Bailey liked the ambulance assignment, it was part of his job. He also received extra pay. The expectation for an employee to complete ordinary tasks cannot be retaliation.

Bailey says that the notation about him breaking the chain of command is retaliatory because he was authorized to do so. The fire department says that he was specifically ordered not to break the chain of command and reminded him of the proper channels of communication. Even if Bailey was authorized to break the chain of command, a form notation recording this was not retaliatory. The entry did not affect the terms or opportunities of his employment.

Bailey believes that, while he was at station 37, station 21 should not have been documenting entries. Even if this is true, these entries did not change the terms of his employment. He admitted that he did not receive any disciplinary entries. During the period in which Bailey says he was retaliated against, he received annual reviews of "strong," which is the second highest rating.

7. Conclusion.

Bailey's claims of race discrimination and unlawful retaliation fail. Terrance Bailey will take nothing from the City of Houston.

Signed on December 21, 2018, at Houston, Texas.

_____
Lynn N. Hughes
United States District Judge